JACK WEBBER ET AL., APPELLANTS, v. THE CITY OF SCOTTSBLUFF, NEBRASKA, APPELLEE.

35 N. W. 2d 110

Filed December 3, 1948.   No. 32440.

*Morrow, Lovell & Bulger,* for appellants.

*James H. Anderson and W. H. Kirwin,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

This is an appeal from a judgment of the district court, based on a jury's verdict assessing the amount of damages to be paid for land taken by eminent domain. We affirm the judgment of the district court.

The land involved was owned by Jack and Mamie Webber, who herein will be called the plaintiffs. The City of Scottsbluff, the condemner, will be herein referred to as the defendant.

The land of the plaintiffs, together with other land, was condemned for street purposes. Plaintiffs owned some 44 acres of land, adjoining the defendant on the southern and western boundaries of plaintiffs' land, but not within the defendant's corporate boundaries. The land taken was a strip 70 feet in width and 2,007.8 feet in length, containing 3.25 acres and running north and

south. Adjoining the land taken on the west and running north and south from the south boundary there was a dedicated road 30 feet in width and 1,277 feet in length. The condemnation widened and extended this road or street.

Plaintiffs' land on the south faced 27th Street which, in the area here involved, has been developed into a commercial and industrial section. At the time of the condemnation the land here involved was used for pasture purposes. It was improved with a picket fence along the west and south sides, within that a dike and irrigation lateral running north and south, and within that a woven wire fence 1,400 feet long.

Appraisers were appointed and damages assessed. The plaintiffs appealed from the award, and trial was had in December 1947. The issue tried in the district court was the amount of damages sustained by plaintiffs. The jury fixed the damages at $6,463.25. From the judgment rendered thereon, plaintiffs appeal.

Plaintiffs' first two assignments are that the damages are inadequate and the verdict is not supported by, but is contrary to the evidence and the weight thereof.

Plaintiffs used several expert witnesses who testified as to the fair and reasonable market value of the land taken. With two exceptions, these witnesses gave their opinion as to the value by mentally dividing the land taken into two tracts, i. e., that part 70 x 300 feet at the south end of the land taken, and the remainder of the tract. Mr. Webber fixed the value of the south 300 feet at $25,000, four of plaintiffs' witnesses fixed it at $7,000, one witness at $6,300, and one at $4,200. One witness fixed the value of the first 200 feet from the south at $4,200. As to the remainder of the tract, plaintiff fixed the value at $18,900, one witness at $5,020, one at $4,500, one at $5,000 to $5,500, and one at $1,250 to $1,375. One fixed the value of the second 300 feet at $1,800. It is apparent that all these witnesses arrived at their opinion as to value on the basis of the south part being used for

business purposes and the remainder of the land being platted and sold as city lots as a part of the other land owned by plaintiffs.

It does not appear that the value of the fences, dike, and lateral entered into the consideration of these witnesses in determining their opinions as to value.

Plaintiffs then offered proof that the cost of reconstruction of the lateral and dike on the land immediately to the east would be $2,044.20; that the cost of reconstruction of the two fences would be $1,820.38; and that a reasonable depreciation would be five percent a year. The fences were built in 1944-1945.

Defendant offered three expert witnesses to prove value. The first two had been appraisers of all the land taken by the condemnation proceedings, and fixed the value of the entire tract at $2,600, to which both in effect said should be added the cost of reconstructing the dike, and the removal and reconstruction of the fences. These witnesses testified that they gave consideration to the use of the land when taken, and to the fact that it was not within the defendant's corporate limits, and also gave a speculative value based upon future business and residential uses. The third witness, a former county assessor, fixed the value of the south 300 feet at $2,800, and the remainder at $275 or $100 an acre.

The rules are: "In a law action where the case is presented to the jury under proper instructions, a verdict based upon conflicting evidence will not be set aside on appeal unless clearly wrong." Scott v. New England Mutual Life Ins. Co., 128 Neb. 867, 260 N. W. 377. "It is the province of the jury to harmonize the testimony insofar as that is possible and, in case of conflict, to decide as to the weight to be given the testimony of the various witnesses." Arman v. Structiform Engineering Co., 147 Neb. 658, 24 N. W. 2d 723.

The trial court instructed the jury that it should find for the plaintiffs in some amount; that the verdict should show the amount of damages the jury found from the

evidence the plaintiffs suffered by reason of the appropriation of the land by the defendant; and that the "* * * value of the fences thereon and the cost of reconstruction of the lateral and dike on the 17th day of June, 1947, should be taken into consideration and allowed as a part of the damages claimed by plaintiffs." The giving of these instructions is not assigned as error. Plaintiffs requested the giving of such an instruction so far as the value of the fences was concerned.

The rule is that instructions not complained of in such a way as to be reviewable in this court will be taken as the law of the case, and if, when tested by such instructions, the verdict is not vulnerable to the objections lodged against it, the assignments will not be sustained. Skinner v. Wilson, 76 Neb. 445, 107 N. W. 771.

It also is the rule that it is presumed a jury followed the instructions given in arriving at its verdict and, unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded. Missouri Pacific Ry. Co. v. Fox, 60 Neb. 531, 83 N. W. 744.

The evidence here then is that the value of the fences was $1,820.38. Deducting depreciation at five percent a year for the two full years elapsing between the time of construction and the date of the taking, the jury might well have arrived at the figure of $1,638.35 as the then value of the fences. The cost of reconstruction of the dike and the lateral is fixed in the evidence at $2,044.20. Consistent with the instructions and the evidence, the jury could then have accepted the opinion of defendant's two witnesses that the value of the land taken was $2,600. The three items total $6,282.55.

The trial court also instructed the jury that to the amount determined as damages suffered, it should allow and add interest at the rate of six percent per annum from June 17 to December 10, 1947. We have held that "The proper procedure in a condemnation action, where an appeal is taken from the award and the case is tried to a jury in the district court, is for the court to

reserve the question of interest for its determination and direct the jury not to include it in their verdict." Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168. However, the giving of this instruction is not assigned as error. Under the above rules it becomes the law of the case, and the presumption is that the jury followed it. Calculating the interest according to the instruction on the sum of $6,282.55, we arrive at a sum, which, added to the principal sum, makes a total which is a few cents less than the jury's verdict. About that over-allowance the plaintiffs are not in a position to complain.

Accordingly, it appears that the jury's verdict is supported by and not contrary to the evidence, nor is it against the weight and reasonableness of the evidence. The first two assignments of the plaintiffs are not sustained.

The plaintiffs' next six assignments of error are that the court erred in refusing to give requested instructions to the effect that in determining the damages the jury should consider the diminution in the market value of the remainder of the land owned by the plaintiffs; that the jury should consider the appreciation, if any, of the value of the land taken resulting from the opening of the street and give the plaintiffs the benefit of that increase; that in estimating the depreciation in the market value of the land remaining the jury should consider every element of disadvantage resulting from the taking; and that in giving an instruction as to the measure of damages the court failed to include the diminution in value of the remainder of the tract not taken and failed to include the appreciation in the value of the land taken resulting from the opening of the street. Plaintiffs cite no evidence that goes to any of these claimed elements of damage. The defendants assert there is none. We find none. The rule is that instructions should submit to a jury only issues of fact supported by evidence. Lebs v. Mutual Benefit Health and Accident Assn, 124 Neb. 491,

247 N. W. 19. The assignments are not sustained.

Plaintiffs' next assignment of error is that the court erred in overruling an offer of proof. On direct examination one of plaintiffs' witnesses was asked this question: "Now, you understand, of course, that there is a possibility of that land being taken into the city, do you not?" Objection was made and the witness answered "Yeah." The court sustained the objection but the answer was not stricken, there having been no motion to strike. Plaintiffs then offered to prove that the witness would answer in the affirmative. Objection was made and sustained. Plaintiffs then offered to prove by the witness that taking into consideration the possibility that the land could be taken into the city, the witness' opinion of the value on June 17, 1947, of the south 300 feet would be $100 a front foot. Objection was made and sustained. The assignment goes to the latter offer. The rule is: "It is not error for the trial court to reject an offer of proof not within the limits of the question on which the offer is based." Exchange Elevator Co. v. Marshall, 147 Neb. 48, 22 N. W. 2d 403. The assignment is not sustained.

Plaintiffs' next assignment of error goes to the refusal of the trial court to strike the evidence of one of defendant's witnesses. The witness had testified as to qualifications, his examination of the land, a description of it, his reasons for fixing a valuation, his opinion that the value of the land was $2,600, to which should be added the cost of moving the fence and the lateral. He was cross-examined at length on several matters. The examination contained 105 questions and answers, near the conclusion of which he testified that, based on an estimate of the city engineer, he thought he knew the cost of removing the fence. Plaintiffs then moved "* * * to strike out the evidence of this witness as incompetent and not based on the actual conditions under which this property was taken and condemned." The indefiniteness of the scope of the motion is apparent. By brief here plaintiffs assert the motion was to strike the evidence of the witness

"relative to his valuation of the land taken * * *." The motion was not so directed. It is not contended that all of the witness' evidence was incompetent. Obviously the court did not err in overruling the motion.

Plaintiffs' next assignment of error is that the trial court erred in permitting Claire Emery, the former county assessor, to testify over objections to interrogatories 1424 and 1425 that the witness understood that the proposed plattings of the strip taken would be in residential lots of 70 feet in depth. The question was if the witness understood that "* * * it is contended that these lots could be divided so that there would be a seventy-foot depth for the lot for residential purposes?" Objection was made that there was no evidence of that kind. The objection was overruled and the witness answered that was his understanding. The question was a foundation question for the opinion of the witness as to value. Obviously the witness should have given the factual basis upon which his opinion if offered was based. The assignment is not sustained.

Plaintiffs' next assignment is that the court erred in sustaining objections of defendant to questions 1443 and 1467 asked of the witness Emery on cross-examination. Question 1443 was: "And referring here to Plaintiff's Exhibit No. 4, which, so far as the extension of Avenue 'B' is concerned is identical with Exhibit No. 1, with the exception of the red and yellow shading, now, it is possible for Mr. Webber to take and plat that seventy feet in connection with the additional land that he owns there, is it not?" The witness had not previously been interrogated as to Exhibit 4. Objection was made. Plaintiffs' attorney said that the question was to show "* * * what it is possible for Mr. Webber to do with that land." The trial court sustained the objection. This witness was not offered as an expert witness on the platting of land. Obviously it was not for him to say what it was "possible" for Mr. Webber to do with the land. We see no error in the ruling. Thereafter on cross-examination

the witness testified that in his opinion the south 300 feet of the strip had a value of $2,800 and the remainder "$275.00. One hundred dollars per acre." He then was asked: "Now, in placing that estimate on it, did you take into consideration that it might be platted into lots and blocks in connection with the rest of the Webber land for residential purposes?" Objection was made and sustained. Plaintiffs' witnesses had testified that they had taken that matter into consideration. We think in view of the other evidence as to value and the base upon which it was given that the witness should have been permitted to answer the question. However, he was immediately asked for what purpose he considered the land would be used when he placed the value of $100 an acre upon it. He answered that the south half could be farmed and the north half would be pasture. (On direct examination he had testified that the land was class 5 irrigated land, class 1 being the best, and class 7 being the lowest.) He then testified that the fact that the land was adjacent to the city "enhanced its value a little." In the light of this testimony we see no prejudicial error in the ruling.

The next assignment is that the court erred in overruling an offer of proof made after the objection to question 1443 was sustained. The offer was "* * * that it is possible for Webbers to plat that seventy feet involved in this case with other land of his adjacent thereto into lots and blocks for both residential and business purposes." For the reasons given above the assignment is not sustained.

Plaintiffs, predicating the offer on the statement that in the event they were permitted to prove by the cross-examination of the witness that the 70-foot strip might be platted into regular lots and blocks for residential purposes in connection with the land adjacent thereto, then offered to prove that "* * * by so sub-dividing the land the opinion of the witness would be that the seventy-foot strip would become much more valuable than if platted separately in seventy-foot lots." This offer was objected

to and sustained. Plaintiffs assign the ruling as error. The offer was without the limits of the question on which the offer was based. The assignment is not sustained.

Following the sustaining of the objection to question 1467, plaintiffs offered to prove by the witness that he did not take into consideration the fact that the portion of the land taken, north of the south 300 feet, could be platted into lots and blocks for residential purposes. Objection was made and sustained. Plaintiffs assign this as error. For the reasons given this assignment is not sustained.

Plaintiffs' final assignment is that the court erred in overruling plaintiffs' motion for a new trial. This presents only matters herein determined.

The judgment of the district court is affirmed.

AFFIRMED.

WENKE, J., concurs in the result.